Mr. Milligan, may it please the court that this is an employment-related contract case. The claims court decided that a DVA trainee assigned to an Army residency program may be terminated from that residency program without any of the rights set out in his residency contract. Do we have a contract in this situation? Yes, we do. Show us where the contract is. 91. What? 91. Thank you. 91 is a residency agreement. It says right there, an agreement, a contract by any other name. Can you turn over to 96, paragraph 8. And just to be clear, this is not a contract with DVA, this is a contract with the Army Center. Yes, sir. It's a different counterparty. That's right. And the Army Center is not the employer. The Army Center, I think the Army Center. The way that I, I guess, I came away from the Court of Federal Claims opinion thinking that there had been at least a premature, maybe an incorrect, conflation of two different legal relationships. One, the relationship that your client had with DVA, which is undoubtedly an employment relationship. There's an SF-50 and it says, and the DVA is the, not the appointing authority, but something like that. And then a separate legal relationship that your client has contractual, expressly contractual, with the Army Center. And that the fact that the two are in some way related, namely the employment disappears if there's a contract. Is that? That's our, that's our, that's our position. He didn't have a contract with the Department of Veteran Affairs. He had a contract with the Department of the Army, William Beaumont Army Medical Center. That's the contract he had. They, the funding for that was provided by a scholarship from the Beaumont is a city and it's 800 odd miles from the hospital. But Beaumont, he did, he did his internship with William Beaumont. Then he, then after that he applied for a scholarship to do a residency with, with the Department of Veterans Affairs. He got that scholarship. He got paid $40,000 a year during his residency. But he did all his It feels to me like it might be unhelpful to your case for you to consider Beaumont a functional employer. If, if those two, if it's all a single entity on the opposite side of a single legal relationship that Dr. Rafai, how do you say his name? Rafai. Rafai had with the United States government, then that looks maybe like just an employment relationship. But if it's two separate relationships with the Army, not being the employer, then maybe you at least have the beginning of an argument that you have a contract with, with the United States government, namely with the Army, but not the VA. Well, I, I, I think I have, I certainly think I have a beginning. I think I have an end. The Army, the, the, the Army, William Beaumont. I guess to, to follow up on Judge Toronto's question, how did the hiring process take place here? Was he, was Mr. Rafai, Dr. Rafai first hired, appointed by the VA through an SF-50? And then somehow there was some separate, distinct action that where you could say he was next somehow hired by Beaumont to engage in these services in exchange for the salary and benefits? It was chronologically different. He was selected for the residency program by William Beaumont and he, and he simultaneously applied for the scholarship with the DVA, getting the, getting accepted into the residency program by the program director, same man who signed this, this agreement for the Army. Dr. Dizzee. Dr. Dizzee, yes. Thank you. Anyway, that, that, that triggered the scholarship on the part of the Department of Veterans, Veterans Affairs and he became, he became their employee and then he became, and, and then he, he entered into his residency. So Dr. Rafai, you have, you, you're saying you have a contract. And so who does Dr. Rafai have a contract with? The United States. The United States government? Yes. The whole? Yes. And how do we know that Dr. Dizzee had authority to enter into that contract? Is there, this is something that the government pointed out that for you to establish jurisdiction, which is your burden, it was on you to explain what was it, statute, regulation, or otherwise, that, that granted, granted you the, the, the, the authority to enter into that contract? Well, he was the program director of that, of the residency program that Dr. Rafai was in. And he was the, and he, he had this relationship with Dr. Rafai throughout his residency. He is, and the program director is a person who has a great deal of, of authority under AR 351-6, 351-3, excuse me. I guess what I'm thinking about is when I was in the government, I managed an office and I would try to hire people, but I don't know if I, on behalf of the United States, had the authority to enter into an employment contract with lots of different terms. Terms that look almost like they're driven by statute, regulation, and policies otherwise. I wouldn't have, I don't think I had that authority to draft up and enter into a contract with anybody that I was hiring into my little office. Well, I, but I think that's, that's exactly what the ACGME rules and the, and the regulation contemplate. The program director is the, is a very prominent figure, mentioned repeatedly in AR 351-3. He's obviously a man of authority. There ought to be, and there, there has to be, I think, a presumption of regularity here. There has to be, the, the, the rules are very clear, the regulation and the ACGME policies, and the Army-wide directive. So, so, Counselor, let's assume that you have a contract, the one that you're describing. Yes, sir. Is it money mandating? Contracts by themselves are money mandating. That's the lesson we learned from Holmes. All contracts, all contracts are money mandating? Well, okay, Higbee. I know, I'm looking at two different sides of that case. And, of course, I agree with Judge Duranto and disagree with you, Judge Reyna. But, I think ... But now you're going to say that that case doesn't control ... Sir? Now you're going to say that that case doesn't control here, right? Well, I think it's distinguishable. I think if you ... In that case, what the two-judge majority decided was that ... Oh, you know this. I don't need to tell you, but I think it is distinguishable. I wasn't on that case. Could you help refresh me over here? Okay. In that ... At least I hope I wasn't. Before Mr. Higbee had a mediation, and there was a normal confidentiality agreement in the mediation. I think it was the Postal Service. Postal Service made an order. Mr. Higbee blew up and came to the conference room where the management was and cussed them out. Now, they fired him for that act of insubordination and misconduct during the mediation. Now, they had that confidentiality agreement. And so they ... And so he claimed that firing him was a violation of that confidentiality agreement. Now, Judge Rayna, for the majority, said that the mediation agreement has its own remedy. You can't use that ... That is the exclusionary rule which keeps out anything that happened in the mediation in the trial. Now, Judge Toronto, whom I thought was correct, said that the agreement is presumed to be money mandating. Now, I think you can distinguish it by saying that in that limited case, that contract is not money mandating. It contains its own remedy, the exclusionary rule. But in this case, I think if you're denied due process, if you're bounced out of a residency program for a reason that turns out to be a Trojan horse, when you get into the hearing, they notify you of one charge. They come in and talk about something else and end up firing you for that. Now, you don't have ... Dr. Refai did not have notice. He did not have an opportunity to be heard. He now has half the earning lifetime potential. Now, I think the ... Do I take it that the damages you seek here are ... may include or may not include. Maybe it doesn't matter. The last two months of the employment with DVA, they are principally about expectation damages for the career going forward. Yes, sir. And I think that's supported by the medical legal environment. Suppose you were ... I realize this would be getting ahead. If the case were to go back and you would get to establish that there was a contract and then litigate whether the contractual procedural protections, which are called the due process policy, were complied with, would the government get to say maybe contractual violation but no harm because if we did it right, you still would have been kicked out of the residency program? They can say that. Prove it. I don't mean to say that. I don't think they can make it ... Prove it. Okay. Would that be a defense? No harm, no foul. I don't know the answer to that. I haven't tried the case in my head. I think there ... but I think that will probably be the defense. Are you looking for reinstatement? That would be nice, but I can't get it from this court. If they had ... yes, yes, we'd love him to be reinstated and get back into his old position. And I assure you if we ever mediate this case, that will be on the table. But you won't tell anybody about it because it would be confidential, right? After the Beaumont Center kicked Dr. Rafai out of the residency program, was there a separate action by DVA to terminate the employment or did that happen automatically? Is there a paper record of the end? I don't think we have a document indicating that.  The termination was automatic. I think that's in the regulation and in the statute somewhere. Would there be ... I don't know if it's an SF whatever, another standard form thing that says ... I think there is, and I thought it was in the record. But you're obviously up on this issue, and if it's not there, it's not there. But now, under current regulations, there is a separate decision made by the Department of Veterans Affairs. So if this happened today, the resident would get one last bite of the apple with DVA. When it comes to the due process rights that Dr. Rafai and any medical resident would enjoy, that's already provided for in that due process policy document, right? Regardless of whether this residency agreement is or is not a contract. Well, it's already ... Let's say there was no residency agreement. Dr. Rafai would automatically be entitled to those due process rights laid out in the due process policy. I think so. As a result of the regulation, which requires a due process policy, and the Army-wide directive, which was the attachment, I think even without a contract, he still would have a right ... That would still be a money-mandating regulation and directive. Well, I guess I'm having trouble trying to see if provision number eight in the residency agreement, even if it were a contract, does it really incorporate by reference into the contract the due process document, or does it say you get these rights over there under the due process policy argument? Don't forget about those, but it's not necessarily incorporated by reference into the agreement itself. I don't think you can incorporate by reference any better than to say, guarantee of fair procedures, see the due process document. Remember, he had signed a receipt for the due process document some weeks, at least, before he came on duty, but they had not signed it. It was their incorporation of it by reference in here that turned this into a contract. Okay. You're out of time, and I'm going to reassure you we have time on rebuttal. So let's hear now from Mr. Sinkheim. Yes, Your Honor. Is there a contract here? No, there's not, but this might be surprising for the court to hear, because this wasn't explained as clearly as it should have been in our brief, but whether or not there was a contract absolutely does not matter. The issue in this case, should be the starting point, is whether a federal employee serving by appointment may challenge his termination other than as permitted by the Civil Service Reform Act. The answer to that question is no. But let me suggest that that's not, in fact, the question, because what he's complaining about is not the termination of his employment. He's complaining about having been kicked out in violation of the contract of the residency program, exactly the way he would complain, though not in this form, if the residency program were at Baylor. Your Honor, I would call the court's attention. And he would sue Baylor on a contract, even if DVA – does DVA sponsors private residency things, not just at the Army? I don't know, Your Honor. Well, let's assume it does. That's the point on which, I guess, I think you know, I'm going to focus on. It feels to me as though there are two separate legal relationships here. One contractual, which happens to be with the Army Center. One employment. The employment you can't go under the Tucker Act. But I'm not seeing that there was a discussion, a recognition of the difference between those two things in the Court of Federal Claims, and I'm not seeing why the second one can be completely folded into the first, which is your argument. I have a legal answer and a factual response. I'd like to discuss them both. The legal answer, I think, is simple. Fausto, the relevant Supreme Court case addressing CSRA Gramshin. That's about an employment relationship, not about a separate contractual relationship. Well, I'll get to that then. Yes, right. Tell me that that's wrong. Fausto holds the comprehensive nature of the CSRA, the attention that it gives throughout to the rights of covered employees, and the fact that it does not include them in provisions for administrative and judicial review, combined to establish a congressional judgment that those employees should not be able to demand judicial review for the type of personnel action covered by that chapter. Personnel action. It's about the employment relationship. Now to get to the, yes, to respond to the factual component of your question. The case is about whether there is something more than an employment relationship, like a residency relationship, which would be identical if he had it with Baylor. I would refer, Your Honor, to the complaint. I'm looking specifically at paragraphs 13 through 24 on pages 6 and 7 of Plaintiff's complaint. This is the transfer complaint that was filed in the court of federal things. Is there an appendix? I apologize. The version that I have is not tabbed with the appendix numbers. It starts at 35 with paragraph. Thank you, Your Honor. I'm looking first at count 1 of the complaint, paragraph 13, page 6 of the complaint. Now count 1 alleges that the Army Hospital had a policy for probationary periods and termination of employees during probationary periods and due process policy for termination cases at the behest of the Army and the Accreditation Board. If you go on to paragraph 16 in count 2, again, it's clear that the allegations all come back to his termination from employment. Same thing with count 3, same thing with count 4. He's clearly challenging his termination from federal employment. And if you look at paragraph 24 of the complaint. Suppose I thought the following, that the complaint in this extremely confusing area was not written quite the right way and that he really ought to have a right to amend the complaint to stop calling his relationship with Beaumont an employment relationship. Why should that not happen? Sure. And we addressed this in our brief, Your Honor. I'm looking for the page cited for you. On pages 20 to 21 of our brief, we explained why the trial court did not abuse its discretion in denying either discovery or leave to amend. And there are two answers. The first answer is that it was not properly requested and there's extensive authority for the proposition that the sort of belated request made in response to a dispositive motion is not sufficient. It's not the same as formally moving for leave to amend. More importantly, it wouldn't have made any difference to the extent that the plaintiff is claiming that he's entitled to discovery, jurisdictional discovery, that's something that he would only be entitled to if he had pled a plausible proper claim. Well, so the futility point I think is a non-answer because that depends completely on accepting the premise that it would not make a difference if he alleged that he had a contractual non-employment relationship with the Army Center to be in their residency program exactly as he would if the residency program were at Baylor. So what remains is the first point, that he used language that conflated the two, perhaps confusingly, perhaps deliberately, and if deliberately then maybe he stuck with it, but if merely confusingly, then why shouldn't, and if it would indeed make a difference between having a claim and not, why is he not entitled to amend? I have another... Because he didn't file the right paper. No, that's not why he filed it. I don't believe there's anything that he could have pled remotely consistent with even the most charitable interpretation of the allegations that we're dealing with now that would entitle him to seek judicial review under the CSRA. I would also call the court's attention to the Chu v. United States. Wait a minute, I don't understand what you said. He's not seeking judicial review under the CSRA. He's seeking to enforce it for damages for breach of a contract. This court's precedent has held that a plaintiff such as Dr. Refai cannot do that, that that is an improper end run around the CSRA. Because it's an appointed position? Yes, absolutely, yes, because it's appointed. But what other case involves an attempt to assert a contract about something other than the employment relationship in which the court has said, no, no, employment with the government is by appointment, not by contract? About something? I'm sorry, can you repeat the question? You have a whole line of cases, a very important line of cases that says if you're a federal employee and you're complaining about what happened to you as an employee, usually discharged, you can't bring that under the Tucker Act with extremely few exceptions. It seems to me, at least I guess I'm curious, I thought every one of those cases, in every one of those cases, in that line of cases, the complainant was complaining about what happened to him as an employee. He was fired, he was whatever. Yes. And the contract claim that if not exactly in this complaint seems to me to be essentially in his complaint is not about his employment relationship. It's about his termination from residency. And he, roughly speaking, doesn't care at all about the last two months of pay from DBA. He cares about the next 40 years of his medical career. I understand Your Honor's view about the significance of the distinction between his relationship with the VA and with the Army. And I'm not aware of a case that has dealt with this specific contractual situation, but I do think that there are several cases from this court that would, at a minimum, be in significant tension with allowing a plaintiff such as Dr. Rafai to achieve this end run, to attempt to characterize his grievance here as something other than an employment dispute, which is really what it is. So what are some of those? I would start with Chiu v. The United States, 773 F2D 1226, from this court in 1985. The relevant language says that Appellant's arguments that their rights as trainees preceded and therefore exceeded their rights as employees is contrary to well-established principle that, absent specific legislation, Federal employees derive their benefits and emoluments of their positions from appointment rather than any contractual or quasi-contractual relationship with the government. Now, again, it's not the precise factual situation that we're dealing with here, but the Court in Chiu recognized that you couldn't get around the CSRA by arguing that you had some separate contractual or quasi-contractual relationship due to your status as an employee that was somehow different than your employment relationship. The Court concluded, Therefore, plaintiff may not base his theory of recovery on contract law since he was a Federal employee. I understand your view, Your Honor. If I remember right, that was a case in which the ultimate thing he was complaining about was the termination of the residency program, but that followed from what the underlying cause, which was the dismissal from employment. So in order to challenge the residency program termination, and it wasn't even quite a termination, it was the end of the program, right? So in order to challenge an employment decision, that's essentially the opposite of what's going on here. Your Honor, I would also refer to Townsend v. United States. This is 468 Federal Appendix 962. This is a 2012 decision of this Court, and I think this is another case that has language that strongly suggests that it's not proper for employees such as Dr. Rafai to circumvent the CSRA by repackaging what is essentially an employment dispute. What makes this essentially an employment dispute? There's no dispute that he was hired and employed by the Federal Government. There's no dispute that he was working for the Federal Government. The VA was paying his salary, and yes, he did happen to be working at an Army hospital. He happened to be part of a residency program with an Army hospital. Correct. The residency program having an express twice-signed agreement for purposes that have something to do with the enormous going-forward consequences of being treated fairly in that residency program. Yes, and perhaps this is a— And that would be true even if it were a Baylor residency program. Correct, Your Honor. Yes, I agree with that. There are additional cases that I'm happy to go through from this Court and from the Supreme Court, all tying back to Fausto, that I think while not precisely factually on point and that they don't involve the identical sort of contractual relationship or employment relationship with somebody hired by one agency and doing work for another agency, nevertheless make clear that this is not a situation where any federal employee is entitled to circumvent the CSRA. But to respond to Your Honor's concerns, I would like to talk briefly about the due process that Dr. Refai, in fact, received in this case. And I think that this is important because, quite frankly— No, that wasn't litigated, right? That is, don't we have to assume at this stage of the case that everything he says about the violation of the due process policy is true just because it's basically on a motion to dismiss? No. The trial court and this Court only have to accept well-pleaded, plausible allegations. And more importantly, there is a published decision from the Fifth Circuit Court of Appeals involving these same parties that preceded this transfer that touches on some of this. It's not binding in this Court, but nonetheless may be persuasive or perhaps inclusive. And I would absolutely encourage the Court to review that opinion closely, and I have it here. Now, this, I don't believe, is in the joint appendix, but this is a published opinion by the Fifth Circuit, and this is on the docket in this case. This opinion is part of the initial transfer package. If you look at pages 2 to 3 of the Fifth Circuit's opinion in this case, it goes into great detail about two important things. Number one, it describes the extensive due process that medical residents at the Army Hospital were entitled to. And I don't think that... So far he would agree. He's not complaining about what they were entitled to. He's complaining about what he got. Right. And then going on to page 3 of the Fifth Circuit's opinion, they make factual findings as to how these requirements were applied to Dr. Rafai. Just briefly to give the Court the overview and background... Was this the age and employment discrimination suits? Yes. This was an appeal of the dismissal or judgment for the government on his Title VII, his ADEA claim, and his initial breach of contract claim. And the Fifth Circuit affirmed dismissal or judgment on every one of the claims but found that it was improper for the district court to dismiss the contract claim. By the way, the district court held that the CSRA precluded his contract claim, but the Fifth Circuit, while not disagreeing with that, held that it was within the Court of Federal Claims jurisdiction to address in the first instance. But I digress. The Fifth Circuit noted that there are three levels of disciplinary actions relevant to this case that the Army regulations provided for. Number one, program-level remediation, which the Court described as typically lasting about 60 days, during which the leadership at the hospital provides additional resources to its residents who are struggling in the residency program. If a resident's deficiencies persist, then you get to the second level of disciplinary action, and that's probation. And then that's followed by termination. And what is not discussed in the briefs in this case is the fact that Dr. Refai was actually on probation for other repeated violations and problems involving patient care that came up over the course of his residency, and on page 3 of the Fifth Circuit opinion. How does any of this help me try to figure out whether this residency agreement is a contract? What I'm talking about right now does not relate to whether or not it's a contract. I think it's not for the reasons discussed in our brief. Number one, there's no plausible allegation of any authority to enter into a contract. Let's just assume for the moment that maybe there is some room for the possibility for a federal employee to also have some kind of side contract deal with some unit of the government. And then the next question, or at least we're not going to say that you can never, ever, ever have that. And anything and everything that you do for the government is always going to be covered underneath the appointment. All right, so then the next question is, what is this residency agreement? How am I supposed to think about this residency agreement, and why can't it be something that's plus in the sense that it's above and beyond and different and distinct from the appointment of him to the federal government? Putting aside FAUSTO and putting aside all the CSRA claims and accepting Yeah, just get to the point, please. Right, accepting that. You would need authority, plausible allegations of authority on behalf of somebody from the government to enter into the contract, and I think the trial court correctly found that there were no such allegations here. You need, as we address in our brief, you need the elements of an express or implied contract, and this is also addressed in our brief, and the trial court touched on all of these issues in its opinion, too. And I'm sorry, this is the point, there was no consideration, even though for four years he was going to provide Army, FOMA, Army Center, patients, medical care, that presumably the Army very much benefited from. Well, to hold that the mere fact of the employment itself is consideration would essentially turn every guideline or policy or procedure that any federal agency has for its employees into a contract, Your Honor. I think that you would need something more, and I don't see what that is here in this case. We're going to have to move along way over time. Thank you, Your Honor. Do I have any time left? You have three minutes. First off, denial of discovery, Judge Chin, coming back to your question, that was denied. The docket sheet in this case indicates a status conference on February 26, 2016. One week after the motion to dismiss was filed, there was a status conference. I asked in that status conference for some discovery about jurisdiction. That was denied. Is this your statement in your opposition to the other side's motion to dismiss, where you requested some discovery about the relationship between the medical education organization and the Army? That was the type of discovery I was talking about in the hearing. It was off the record. I tried to get a copy, a transcript of it, and there was no transcript taken, so it was off the record. I said I needed to do some discovery. The court said you're not going to get to do any discovery. I need to know, do you have a money-mandating statute or don't you? I repeatedly brought up the subject of discovery, and I would have liked to have it, but I can't tell you what authority Dr. Deasy had in this case. But when you asked for discovery, my understanding of your request for discovery was limited to the question of what is the relationship, if any, that is deemed to be a contract between the medical education organization and the Beaumont Medical Center to the extent such that if there was a contract, then your client would be considered a third-party beneficiary of said contract. Well, okay, that was a long-term objective of discovery. Have I mischaracterized what your request for discovery was? I don't remember it as I stand here today. I was trying to talk about everything I intended to cover in discovery. As far as the third-party beneficiary issue goes, I probably would plead it now. Now that I have the benefit of the Ingham case decided by this court a couple of months ago, that was the TRICARE dispute where this court found a contract from just the frequently asked questions about a policy that the government had about reimbursement for TRICARE services and an application for services under that contract. Now they found that to be a contract. Now what we've got is ACGME requirements, and apparently Fort Bliss saying, okay, we'll go along with that, I mean William Beaumont saying we'll go along with that. Or maybe it was at a higher level than that, I just don't know. But yes, I would plead it now, knowing how tolerant this court is. When it comes to an employee that gets appointed to an employment position by the federal government, isn't it true that necessarily the appointment has many basic elements like salary, benefits, termination rights? They all are part and parcel with that appointment. Isn't that right? Yes, there is, but there's already... Then the question then comes for me, at least when I look at this residency agreement, why doesn't that just merge into what is your garden variety appointment when everything that's in there is essentially reflecting the basic elements of any federal employee appointment? There might be some details on this or that, but in the end it's sick leave, it's insurance, it's salary paid by the VA, and so I'd like you to answer. Permission to continue. Okay. All right, I think the answer to that is, first off, this is a contract between the United States and an individual. Second, there are already things about the employment relationship, litigation related, that aren't necessarily, where the contracts are not necessarily prohibited. The long line of cases, of which Higbee was a part, starting with Holmes, have held that the Court of Claims can certainly enforce settlement agreements of existing lawsuits with employees. Now, I don't think it's a, I think when you've got a case like this, where the government enters a contract like this and then seeks to avoid it, you've got to, you were fairly implicated. That recent case from two months ago where this court said, in enforcing the contract rights of the Ingram Medical Center, to hold otherwise would allow an agency to flout its contractual commitments with impunity. That's what I think the United States wants in this case, and I don't think that's what the court should do. Okay, Mr. Chairman. I'm way over. Thank you. No, we thank you.